This is People of the State of Illinois v. Mark Willett, Case No. 4-13-0702. Attorney Yoon is here on behalf of the appellant. Attorney Manchin is here on behalf of the appellee. Mr. Yoon, am I saying your name correctly? Yes, you are. Alright, you may begin. Good afternoon, Your Honors. My name is Chan Yoon, and I represent Mark Willett in this matter. This afternoon, I will be addressing Issues 1 and 2 from the briefs, and I will also be happy to answer any questions you may have concerning Issue No. 3. And I'd also like to reserve three to five minutes for everybody. Mark Willett's primary defense in this case was that he acted recklessly rather than knowingly, or in other words, that he disregarded a substantial risk of harm and that he was not practically certain that his actions were going to result in that harm. However, the trial court essentially prevented the defense counsel from presenting that defense by most notably refusing to instruct the jury on the lesser good offense of reckless conduct. And as a result, the jury could only choose between two options. They could either acquit Mark Willett, or they could find him guilty of aggravated battery to the child, even if they believed that he had only acted recklessly. So going into the lesser-included offense instruction issue, in Illinois, a lesser-included offense instruction is mandatory whenever there is very slight evidence supporting that lesser-included offense. And here that low standard was met primarily by Mark Willett's statement to the police, which was played live in front of the jury. In that statement, he admits to two acts. He admits to placing his child into a swing, not super fast, but not real gentle either. And he also admits to shaking his child several times so her head was bouncing back a little bit, but not out of control. He then went out for a cigarette, and then by the time he came back, he realized something was wrong with his child, and then he and his cousin took the child to the hospital. From those set of facts, also considering the fact that he was up since 6 a.m. and had been working all day and had come back to look after his daughter in the late afternoon while his girlfriend was at work. From those set of facts, the jury could conclude that this was an act that happened in the heat of the moment and that it was a momentary lapse in judgment and that he didn't intend to cause these injuries. And that's the very definition of recklessness. So because of that, evidence was present in this case. The court should have given that instruction when it was requested for reckless conduct because the standard is just very slight evidence. So that evidence should have been, or that instruction should have been given. We did cite a motion for additional authority in this case. In that case, people be cooked, and it also involved a shaken baby case. In that case, the defendant, just like Willett did in this case, admitted to shaking his child on several occasions actually, not just once. And he also admitted that he knew that he was harming his child because the child would become unconscious during two of the prior occasions when he shook him. And actually, the child, unfortunately, those were fatal injuries in that case. And he was charged with first-degree murder. But the court did give an instruction on involuntary manslaughter, which is also based on reckless. And he was actually found guilty of involuntary manslaughter. The facts are similar in this case. We have a videotaped statement that provides that evidence that he just acted recklessly. In fact, this case probably presents a less culpable scenario because this is an isolated incident, whereas in Cook, there were several occasions where the defendant admitted to shaking his child. So for that reason, if that instruction was given in Cook, that reckless instruction should also be given in this case, considering similarity in the facts. Also, it could be argued that the statement is unbelievable, but that decision is for the jury to make. It's not for the judge to make. Whether the judge thought that the statement was unworthy of belief is not his job. It's not his job to try and affect. He just is there to instruct on the law. So you don't believe the judge has a role to play in determining the credibility of that evidence that may exist, that it was reckless? Correct. If there is evidence where it can be inferred by a rational juror that the defendant acted recklessly, the judge cannot deny the jury from making that decision. The judge has to give the jury the opportunity to make that decision, if even very slight evidence exists, as it did in this case. So the judge is only determining if slight evidence exists, not necessarily the quality of that evidence? Correct. And the case law is clear on that. In the cases that we cited and the cases from the 4th District, people be Murphy, and Supreme Court people be Jones. Why didn't the trial judge give the instruction in this case? The trial judge based it on the medical evidence, the seriousness of the injuries. And there's no denying that there was serious injury occurred in this case, but regardless, the result is unrelated to the cause of the injury. If the cause of the injury was reckless, the degree of harm of what happened, it doesn't have any impact on how the actor acted. It might be probative on that point, but it's not dispositive, because in murder cases, the ultimate harm, you can have death, but you can still get instruction on involuntary manslaughter. We're not trying to downplay the injuries here, but just because the injury was serious doesn't mean that the judge was entitled to Just moving on to the second issue, number two. This is related, and all these issues, I think, we want to get the point across, is that all these issues are related to mental state, because that was the central issue at trial. And here, in issue number two, this is pretty much what it does, is it aggravates the fact that the judge denied the jury from hearing the instruction on reckless conduct. Because here, in issue two, what we argued is that the prosecutor stated the law on the mental state of knowingly, by stating that it referred to the act, rather than being practically certain that your actions are going to result in the harm that happened in this case. And that happened during closing argument. Again, this aggravated the error by pretty much lessening the burden of what the jury had to find in terms of what the requisite mental state is necessary for a guilty verdict on aggravated battery. And defense counsel was actually denied an opportunity to respond to that, because she was specifically told not to argue on what she supported at trial was the actual standard for the mental state for knowingly, which is, again, to be practically certain that your actions are going to result in that harm. In that harm, or in bodily harm? I'm sorry, in great bodily harm. In great bodily harm. Even though the case law supports her position, she was unable to argue that and counter what the prosecutor stated. So the jury could have decided this case under the belief that Mark Willett only knowingly had to be conscious of what he was doing, not that he had to be aware that his actions were going to lead to great bodily harm. So for that reason, that prosecutor misstatement in this case essentially aggravated the harm of the denial of the reckless conduct instruction. Again, these issues are all related to the mental state here. So your position is basically the state led the jury to believe in this closing argument that they just had to be satisfied that the defendant knew what he was doing and that he knew he was shaking the child in order for them to find him guilty. Yes. If you look at the record, it's in the rebuttal statement. The prosecutor states, and I'm quoting this, did he undertake these actions in a state of knowing what he was doing? Obviously he did. So from that statement alone, the jury couldn't infer that, no, I only had to find that he knew what he was doing, and that I only have to find that he consciously knew he was doing these acts to his child. But that's not the law. The law is clear that the person has to be practically certain that his acts are going to cause the great bodily harm. So that would be a misstatement, and our position is that it could have infected this trial and was prejudicial to Mark Lillet. And just again, just to sum up briefly, our third issue is the non-accidental, accidental terms. Again, that's another factor against the mental state. Was some of that brought out during cross-examination though? It was brought out during cross-examination, but counsel challenged it from coming in to begin with, and our whole position is that the terms non-accidental and accidental are loaded terms. Even though they were presented as medical terms of art in this case, those terms have, I mean, under their plain meaning, when something's a non-accidental injury, you're automatically going to think that, well, there's an intentional cause behind that injury. Wasn't it made pretty clear by the prosecution that it was basically the difference between the injury being focal versus damage on both sides? I mean, it was pretty clear that they weren't talking in terms of it was an accident or the person did it on purpose. Sure, yeah. That was definitely brought out during trial, and the experts used those terms in that way in some of their testimony. But again, those terms, you're asking the jury to just disregard what they understand those terms to mean, and then second of all, the experts actually went away from that at certain times during their testimony. An example of that is Dr. Kapil Sachivy. He testified that based on his review of the medical records and the interview, Mark Willett's confession to the police, that he concluded that the injuries were non-accidental, which suggests that he's thinking that these injuries, he's not using non-accidental just to mean diffuse injuries, he's using that to mean that these injuries were intentionally caused. And Dr. Train didn't have a direct example like that, but he did say that non-accidental injuries are related to child abuse. Again, suggesting that these are injuries that are intentional, that were done intentionally with intent to harm. So with that said, I would just request for the release that we requested in our briefs. Thank you. Thank you, counsel. Mr. Manchin? Afternoon, Your Honors. Maine Police Court, counsel. In this case, the trial court did not abuse its discretion in its instructions to the jury. There is simply no evidence of recklessness on which to base instructional reckless conduct. The defendant basically gave two statements. In his first statement, he basically said, I found the child unresponsive. I don't know why or what happened. Obviously, no claim of recklessness can be based on that because it's, I didn't do anything. The child got injured. I don't know how or why. So no basis for instruction on recklessness there. In his later statement to the police, he admits throwing the child, shaking the child five or ten times, shaking the child because he was frustrated. And his entire statement shows that he knew he was shaking the child. He knew the risks of shaking the child. He knew that the child was fragile and that he shouldn't be shaking it. Where is the evidence of recklessness? The claim that the injuries were accidental does not equal recklessness. Recklessness and accident are two different things. There is just simply nothing here to show that the defendant was merely reckless when he admitted that he knowingly shook this child and he knew that the child was fragile, that he knew that there was a risk of harm. So there's simply no basis for instruction. Then you get to the medical evidence as to the nature of the injuries, that the nature of the injuries, the one expert said that these were car collision type injuries that this child had inflicted. Based on the nature of that injury, no claim of, that you were just being reckless could be based on that. The experts also said that the injuries were such that you had to know that the way you were handling the child was excessive or severe based on the nature of the injuries. So there's simply no evidence of recklessness there. In his brief in a trial, the defendant tried to create the theory that, hey, maybe this child was predisposed to brain bleeding, the slightest injury at all would cause these type of injuries. While the doctors testified that there were certain medical conditions that could cause this type of thing, they agreed that this child did not suffer from those. They expressly rejected the defendant's attempt to say that this child was predisposed to this type of injury. So to say that there was a right to an instruction on recklessness because of the child's predisposition to injury, there's just simply no evidence of that. And finally, assuming argument that a recklessness instruction should have been given, I think the evidence as far as the defendant's knowledge is so overwhelming that the result would have been the same if you had the instruction given so that the hardest error in analysis should be applied. The prosecutor in rebuttal, after the defense counsel argued that the state failed to prove that the defendant knowingly caused great bodily harm to the child, said this, I want to be absolutely clear with you that we have to show that when the defendant took actions and did things to M.W. that he knowingly acted in that way, we do not have to prove that when he committed these acts that he knew the extent of what our injuries would be. That's not a correct statement of the law, is it? You look at the entire statement of the prosecutor, not certain excerpts from it. If you go down the page, maybe four or five sentences, the prosecutor goes on and says, we don't have to prove in such a way where he knowingly did things thinking, oh, I'm going to cause her to have a subarachnoid or subdural or anything like that. Isn't that a further incorrect? I mean, that's true that they don't have to prove that he knew that it would be that exact result, but it certainly doesn't incorporate the correct standard of what they have to prove. I think it is a correct statement of the law. They're not required to prove that when the defendant did this, that he knew this particular type of injury, this exact type of injury. That's what the argument is. But when you couple that with the prior statement, do you believe the jury understood that they would have to prove, the state would have to prove that he anticipated that there would be great bodily harm? I think if you read the entire argument from the opening argument as far as the rebuttal argument and not just that one sentence out of context, I think the jury did know that they had to find that the defendant knew that great bodily harm was going to result when he was engaged in this conduct. Given that this was the primary issue that the defense counsel argued, why did the trial court reject the instruction, the finding knowingly, which would have clarified it? Well, there was an agreement reached that the defendant stated that we will not give the instruction unknowingly unless the jury asks for it. I don't think that was the agreement. I think that was the ultimate resolution. But the defendant asked for it knowingly and argued that this is an important instruction to give to clarify just what the state's burden is. And, you know, when we're balancing should I give an instruction or not, sometimes one of the issues is the need for it versus the potential prejudice. The need seems, in a case like this, pretty clear. What's the prejudice to the state from giving the IPI instruction, the finding knowingly, so that the jury would understand exactly what the state had to prove? Probably none from giving it, but also probably no prejudice either to the defendant by not giving it under this circumstance, where there was an agreement that this is a term that knowingly is a term that is known. I don't want that sort of redundancy. Knowingly is known? Knowingly is known. It's sort of redundant. But it is a common term that everybody's aware of and everybody understands that the jury was not. Well, but in cases of aggravated battery or bodily injury, there's a whole lot of cases talking about how a person acts knowingly if he or she is consciously aware that his or her conduct is practically certain to cause great bodily harm. I don't see that as necessarily being intuitive in a lay jury, and particularly when the prosecutor gets up and says, and addressing this explicitly, we do not have to prove that when I committed these acts that I knew the extent of what our injuries would be. To the extent they might have thought otherwise, here's this prosecutor saying, forget about that, folks. We don't have to prove that. But the prosecutor didn't stop there. He went on to say. So at best, it's an ambiguous statement, and the court never stepped in by giving the IPI instruction to clarify exactly what this burden is, even though, again, this was the big issue that the defense counsel raised, and the defense counsel was thwarted, maybe even threatened by the court, don't be arguing anything otherwise. Well, except if you read the defense argument, he really was not thwarted from presenting his theory to the jury as far as what he. Except he couldn't argue, ladies and gentlemen, the state has the burden to show that when my client did these things, he knew what the extent of her injuries would be. He did. Without using those exact words, he did make that argument. Well, the exact words might have been, especially since they reflect what the law is, I know you're not the judge and you weren't the trial counsel, but this is a troubling business when the jury wasn't given the definition that would have clarified this. And, again, you're looking at a panel of a bunch of former trial judges, and I'm thinking, what's the harm in defining knowingly? The most that can be said is it's surplusage, that addresses a matter that's not going to come up. Everyone understands it. But in this particular case, it was obvious, and to defense counsel's credit, this issue was made known all along. But the concern was the court still rejected it. And, of course, the prosecutor didn't help the court. The prosecutor said, nah, forget about that, judge, you don't need to give that instruction. But that is not the standard of review as to whether it, the standard of review is not whether it would be helpful, or that it would have done no harm to have given it, or that it would have been a better idea, a better practice to have given it. That is not the standard of review. Here, where we have the parties saying, okay, we'll agree that we will not give an instruction knowingly unless it's requested, to now say that it's reversible error not to have given it when everybody has agreed to proceed in that way is improper. But my concern is, of course, you have that jury instruction conference well before closing arguments, and here we have a situation where in the closing argument the prosecution basically misstates the law. And I don't recall from my reading of the record whether or not objection was made to this particular statement. Well, I think the court had made it pretty clear to defense counsel that you better not. Yeah, but I'm referring to the prosecutor's remarks. I do not recall whether there was an objection to that. Right. I understand what you're saying. But my point is, as Justice Steinman just indicated, it had been made very clear to defense counsel that you don't go there. And so I think it's a legitimate thing to say that perhaps defense counsel thought that she would be going awry with what the judge had told her she better do or not do. But if you look at what the defendant was allowed to do without any objection, she did, without using the express words that Justice Steinman suggested, she did present that theory that, hey, the state did not prove that my client knowingly caused great bodily harm to this child. They brought out the theories of predisposition or other medical conditions that could have said, and if the doctors can't predict this, how could the defendant know that shaking this would cause this. The entire argument, despite the court's admonition, fully presented the argument or the theory of this defense. So to say that the trial court's restriction is reversible error, I do not believe it is. I guess my concern is, I understand what you're saying, but isn't this all done in the context of a certain definition of what knowingly means and the wrong definition of what knowingly means in the context of this case and the law that relates to this case? Except the wrong definition was not presented. Unless you take that one sentence out of context, and the law is clear, you can't take one sentence out of context and say, okay, this is wrong. You have to take the argument in context of the entire argument of both the defendant and the state. And if you take it within that context, the statement, the argument was simply that you don't have to prove that the defendant intended to cause a fractured skull or a subdural hematoma or whatever. And that is a correct statement of the law. Are there no further questions? Mr. Yoon, rebuttal? I just wanted to emphasize again here that mental state is the primary issue in this case, whether he acted knowingly or recklessly. And here, there was evidence that he acted recklessly. I just wanted to go back to the record about what the state said about throwing the child. That's not in the record. He does say he threw the child in the bed, but that's an expression. He's saying as if you would throw keys on the bed, not that he tossed her. He explains it later in the statement if you do take a look at the live video testimony. And again, he admitted that he knew that his child was fragile, but that doesn't mean that he knew that his actions were going to result in these serious brain injuries. So again, there's evidence here that supports reckless instruction. As for the instruction on knowingly or what happened with the jury being instructed on the mental state of knowingly, trial counsel wanted to argue that, but if you look at the record, what happened was the trial court stated if you argue that, you will feel the weight of the court come down on an objection. She didn't agree to that. She knew that if she made that point in closing argument, arguing actually the correct law, then the court would have really come down on her, and she would have definitely lost merit with the jury. The jury would have looked down on her arguments, so she didn't want to go down that road. But the jury here wasn't even instructed on the definition of knowingly. Correct. Correct. They weren't even instructed, and defense counsel was prevented from essentially arguing what the correct law was. And that's it. So thank you, Your Honors. Thank you, counsel. We'll take this matter under reclusement and be at recess.